**THOMASON et al. v. MARTIN et al.**

No. 12439—Opinion Filed Jan. 15, 1924.

1. **Homestead—Occupancy— Intention Presumed.**

M. owned and with his wife occupied real estate as their home. Thereafter said wife abandoned him, but was never divorced. Thereafter M. executed a deed for said real estate, not being joined therein by such wife. M. recited in such deed that he was a single man and stated to the purchaser that he lived in another state and that said land was unoccupied. Held, that the intention of M. to occupy such land as his homestead, at the time he in fact did so, is presumed, there being no evidence that at such time M. had any intention otherwise; and held, further, that such subsequent recitation in said deed and said declaration of M. were immaterial, since the homestead character had previously been impressed upon such real estate.

**2. Same—Conveyance— Requisites —Joinder of Spouse.**

Under section 2, article 12, Constitution of Oklahoma, prohibiting the sale of the homestead of the family, where the owner is a married man, without the consent of the wife, given in such manner as may be prescribed by law, the said deed referred to in syllabus par. 1, above, executed by M. without being joined therein by such wife, was absolutely void.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Washington County; Chas. B. Wilson, Jr., Judge.

Action by John S. Thomason et al. against Sam Martin et al. to recover real estate. Judgment for defendants. Plaintiffs appeal. Affirmed.

Kornegay & Probasco, for plaintiffs in error.

George, Campbell & Ray, for defendants in error.

Opinion by ESTES, C. Ocie Martin was a citizen of Cherokee Nation enrolled as a freedman. The 30 acres of real estate in Washington county, in controversy herein, was a part of his allotment. In 1904 he built a small house on said real estate, married, and occupied said real estate with his wife for several years. Sometime prior to July 31, 1908, his wife abandoned Ocie, but still lives in an adjoining neighborhood. Said Ocie continued to live on said premises, except he went to Cherryvale, Kan., where he was but a short time before his death at that place in 1910 or 1911. On said July 31, 1908, he executed and delivered a deed for said real estate to one Mandler. In said deed it was recited that said Ocie was a single man, although he was never divorced. His wife did not join him in the execution of said Mandler deed. Defendants in error, or some of them, took and held possession of said real estate upon the death of said Ocie and claimed the same as his heirs. Plaintiffs in error claim the title and possession of said real estate through mesne conveyances from said Mandler. They brought this suit in the district court of said county against the defendants in error accordingly. Defendants in error base their defense herein as such heirs of said Ocie on the theory that said land was impressed with the homestead character on said July 31, 1908, when the said Mandler deed, under which plaintiffs in error claim, was executed and that the wife of the said Ocie not having joined in the execution of said deed, the same was absolutely void under the Constitution and laws of Okla-

homa. The cause was tried to the court without the intervention of a jury, resulting in a judgment for defendants, from which plaintiffs have appealed.

It is conceded that the sole question in this case is, Was the real estate described in said Mandler deed the homestead of said Ocie on July 31, 1908 ?

1. The court found that the said Ocie, at the time of the execution and delivery of the said Mandler deed, was a married man, and that the said land had been selected by him as his homestead for himself and his family, and that the same was impressed with the homestead character under the Constitution and statutes of Oklahoma, and that the said real estate, when said Ocie signed said deed, was occupied by him and his family as their home.

It is contended by defendants in error that said Ocie did not in fact occupy said real estate as his homestead, and that there was no intention on his part so to do, shown by this record. There is no conflict in the evidence except on said two propositions. There is ample evidence in the record to sustain the findings of the court on these and all other matters. In any event the findings are not clearly against the weight of the evidence. By well known rules, therefore, the judgment cannot be disturbed. It inheres in said findings, and it is evident from the language thereof, that said Ocie had occupied said land as his homestead prior to the date of said Mandler deed. Said land therefore partook of the homestead character prior to the date of said deed. The contention of plaintiffs in error that there was no intention to occupy same as a homestead is based upon the recitation in the Mandler deed that said Ocie was a single man, and on the testimony of one witness that at the time of the execution of the Mandler deed, said Ocie stated that said land was unoccupied, and that Ocie lived in Kansas. Let it be remembered that said deed was executed and the alleged statements made after said Ocie had been abandoned by his said wife but not divorced, and after said land had been impressed with the homestead character. Said land having been occupied by said Ocie and his wife as a homestead prior to the date of such deed, as found by the court, the intention so to occupy the same is presumed. There is no testimony whatever that at the time said real estate was first occupied by said Ocie as his homestead, and thereby became impressed with the homestead character, that he had no intention to so occupy same. It is intended hereby to hold that actual occu-

pancy of real estate by husband and wife would impress the same with the homestead character, in the absence of an intention to occupy as a homestead. It is conceivable and may reasonably transpire that real estate may be owned by a member or members of a family and actually occupied by such family without the intention so to occupy same as a homestead. The record is not definite as to the date when his wife abandoned him, but it was sometime between 1904 and July 31, 1908, the date of such Mandler deed. The said recitation in said deed and the said declarations of said Ocie were immaterial on the questions of intention. Said declarations do not in fact pertain to the intention of said Ocie at the time prior thereto when he did in fact occupy said land as his homestead. The authorities cited by counsel have to do with cases in which it was sought to establish the homestead right by intention, coupled with acts of preparation to occupy, but without actual occupancy. In such cases intention is the primary element. Johnson v. Johnson et al., 82 Okla. 259, 200 Pac. 204.

2. It is next contended by plaintiffs in error, in effect, that defendants in error, as heirs of said Ocie, cannot assert the homestead character of said land without consulting the wishes and intention of the surviving spouse—there being no children. In other words, it is contended that said surviving wife was the only one who could assert the homestead right in said land, and that she was either denying the existence of the homestead by abandonment or declining to assert the same in this cause. In the leading case of Whelan v. Adams et al., 44 Okla. 696, 145 Pac. 1158, it is held in the second paragraph of the syllabus:

"Homestead — Conveyance—Requisites—Joinder of Spouses. Section 2, art. 12, of the Constitution, prohibits the sale of the homestead of the family, where the owner is a married man, without the consent of the wife, given in such manner as may be prescribed by law." Fetterman v. Franklin et al., 88 Okla. 1, 211 Pac. 403.

One spouse owning the real estate, by a conveyance without joinder of the other, could bind himself thereby, prior to the adoption of our Constitution and under statutes then in force. Maloy et ux. v. Wm. Cameron & Co., 29 Okla. 763, 119 Pac. 587; Christie et al. v. Thompson et al., 88 Okla. 85, 211 Pac. 513. Holding, as we do, that said real estate was impressed with the homestead character sometime prior to the execution of the said Mandler deed, said deed was absolutely void. Whelan v. Adams et al., supra, contains the following, which is pertinent:

"We deem the fact of what caused the wife to leave and remain away from home, and whether her abandonment was voluntary or involuntary, as immaterial. They were still husband and wife, never having been divorced, and there is no exception written in our Constitution authorizing the husband to sell the homestead without the wife's consent upon her voluntary abandonment of him. Neither are we disposed to write into the language used an implied exception."

"When property has once been impressed with the homestead character, no act or omission on the part of the husband, without the consent of his spouse, can result in an abandonment of the homestead by the family. The homestead is for the benefit of the entire family and such joint interest is to be regarded as paramount to the rights of any individual member thereof." Alton Mercantile Co. v. Spindel et al., 42 Okla. 210, 140 Pac. 1168.

In such case it must be made to clearly appear that the wife voluntarily intended to relinquish and did abandon the homestead, and that another homestead had been acquired, before the husband can convey it without her consent, given as required by law. Long v. Talley et al., 84 Okla. 38, 201 Pac. 990. It does not clearly appear that the wife in the instant case intended to abandon the homestead. Her abandonment of Ocie was not necessarily an abandonment of the homestead. Her rights, if any, in said real estate are not involved nor material herein. Plaintiffs should recover, if at all, on the strength of their own title.

It is not deemed necessary to consider the other points raised. Let the judgment be affirmed.

By the Court: It is so ordered.